**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>HUSSEIN FADL OSMAN,<br>*Defendant*. | Criminal No. 19-CR-225 (RBW) |

**MOTION AND MEMORANDUM IN SUPPORT OF PRETRIAL RELEASE**

Hussein Osman, through the undersigned attorney, respectfully requests that this Court release him on bond pursuant to the Bail Reform Act, 18 U.S.C. § 3142 and *United States v. Salerno*, 481 U.S. 739 (1987). Section 3142(b) states that the Court "shall order the pretrial release of [Mr. Osman] on personal recognizance . . . unless" there are absolutely no conditions of release that would ensure Mr. Osman's appearance at court and the safety of the community. It is the government's burden to show either (1) by a preponderance of the evidence that Mr. Osman is a serious risk of flight or (2) by clear and convincing evidence that no conditions can ensure the safety of the community.[1] The government has not and cannot meet that burden. Mr. Osman has strong ties to the Washington, D.C. area, a non-existent criminal history, and a local family that can support him during his release. Mr. Osman asks the Court to find that there are conditions that will reasonably ensure his appearance and ensure the safety of the community and to release him under those conditions.

**FACTUAL BACKGROUND**

Mr. Osman was arrested on or around June 9, 2026. After being taken into custody, due to significant medical conditions requiring prompt treatment, he was transported to the hospital. At his initial appearance on Wednesday, June 10, 2026, the government moved to detain Mr. Osman

---

[1] Because the government requested detention only under 18 U.S.C. § 3142(f)(2)(A), this memo does not separately address the alternative basis for detention concerning community safety. This memo does address lack of dangerousness in discussing the Bail Reform Act detention factors.

pending trial pursuant to 18 U.S.C. § 3142(f)(2)(A). A detention hearing is set for Wednesday, June 17, 2026.

## ARGUMENT

Consistent with the presumption of innocence and the Eighth Amendment prohibition against excessive bail, the Bail Reform Act of 1984 (BRA) provides that a defendant should be released pending trial on personal recognizance or "subject to the least restrictive further conditions, or combination of conditions that . . . will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(b) and (c)(1)(B). The Supreme Court has explained: "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *Salerno*, 481 at 755; *see also United States v. Singleton*, 182 F.3d 7, 9 (D.C. Cir. 1999) ("Detention until trial is relatively difficult to impose."). The BRA also makes evident that "[n]othing in this section shall be construed as modifying or limiting the presumption of innocence." 18 U.S.C. § 3142(j). As a general rule, courts should refuse to release defendants on bail "[o]nly in rare circumstances," and "only for the strongest of reasons." *United States v. Motamedi*, 767 F.2d 1403, 1405, 1406 (9th Cir. 1985) (Kennedy, J.). Any "[d]oubts regarding the propriety of release should be resolved in favor of the defendant." *Id*. at 1405.

The government bears the burden to demonstrate either by a preponderance of the evidence that the defendant is more likely than not to flee or by clear and convincing evidence that preventative detention is necessary to ensure the safety of the community. *See United States v. Jessup*, 757 F.2d 378, 384 (1st Cir. 1985) (Breyer, J.). Under the BRA, the Court must consider the following factors when determining whether the government has presented sufficient evidence that a defendant be detained: (1) the nature and circumstances of the offense charged; (2) the

weight of the evidence; (3) the history and characteristics of the person charged; and (4) the nature and seriousness of the danger posed by the person to any person in the community if he is released. 18 U.S.C. § 3142(g). Notably, no presumption of detention applies in this matter.

### I.   The Government Cannot Meet Its Burden of Proving that Mr. Osman Poses a "Serious" Risk of Flight Under 18 U.S.C. § 3142(f)(2)(A).

Mr. Osman should be released on conditions because there is not a "serious risk that [he] will flee" the jurisdiction under 18 U.S.C. § 3142(f)(2)(A) such that detention is warranted.

As the statute's plain language and legislative history make clear, ordinary "risk of flight" is not appropriately considered under § 3142(f). Indeed, detention based on serious risk of flight is only appropriate under "extreme and unusual circumstances."[2] This heightened standard makes sense because there is some risk of flight in every criminal case. In order for the government to justify a defendant's detention as a *serious* risk of flight, there must be more than mere motive or opportunity to flee; every defendant, particularly those facing serious charges, carries those particular characteristics. *Abrahams* (cited in the BRA's legislative history) provides an example of an extreme and unusual circumstance justifying detention on the grounds of serious flight risk. Unlike this case, the defendant in *Abrahams* was a fugitive and serial impersonator who had failed to appear in the past and had recently transferred over a million dollars to Bermuda. *See United States v. Abrahams*, 575 F.2d 3, 4 (1st Cir. 1978). Given the BRA's language and persuasive case law, the government must demonstrate that the risk of flight in a particular case rises to the level of extreme or unusual such that detention is warranted. And critically the "preponderance must, of

---

[2] *See Bail Reform Act of 1983: Rep. of the Comm. on the Judiciary*, 98th Cong. 48 (1983) ("Under subsection f(2), a pretrial Detention Hearing may be held upon motion of the attorney for the government or upon the judicial officer's own motion in three types of cases…[T]hose [types] involving . . . a serious risk that the defendant will flee…*reflect the scope of current case law that recognizes the appropriateness of denial of release in such cases*.") (emphasis added) (citing *United States v. Abrahams*, 575 F.2d 3, 8 (1st Cir. 1978)—which held that only a "*rare case of extreme and unusual circumstances…*justifies pretrial detention"—as representing the "current case law"); *see also Gavino v. McMahon*, 499 F.2d 1191, 1995 (2d Cir. 1974) (holding that in a noncapital case the defendant is guaranteed the right to pretrial release except in "extreme and unusual circumstances").

course, go to the ultimate issue: that no combination or conditions – either those set out in the Bail Reform Act itself or any others that the magistrate or judge might find useful – can 'reasonably' assure that the defendant will appear for trial." *United States v. Xulam*, 84 F.3d 441, 442 (D.C. Cir. 1996).

No such showing justifying detention can be made here. Mr. Osman has numerous family members living in the greater Washington, D.C. area. Many of these family members are willing to support Mr. Osman financially and otherwise as he proceeds through the criminal process. Moreover, Mr. Osman has no criminal history and therefore no demonstrated pattern of non-appearance in the face of a court order to do so. The defense anticipates that the government may argue that Mr. Osman has ties to countries other than the United States and therefore is a risk of flight. However, it bears noting that Mr. Osman's ability to leave the country is made extremely difficult given that, as far as counsel understands, the United States seized the documents Mr. Osman would need to exit the country at the time of his arrest.

Importantly, the D.C. Circuit has held that even a defendant's ability to flee the country based on ties to a foreign country and a demonstrated ability to evade border controls, without evidence that he is *likely* to flee, cannot serve as the basis for pretrial detention. *See Xulam*, 84 F.3d at 443. In *Xulam*, the court rejected the government's contention that the defendant – an immigrant from Turkey who was charged with falsifying information on a passport and had only been in the country for three years – should be denied bail because nothing could stop him if he decided to flee. *Id.* at 444. The Court explained that "Section 3142 speaks of conditions that will 'reasonably' assure appearance, not guarantee it." *Id.* The same logic applies here. The government cannot demonstrate that Mr. Osman is a serious risk of flight, and they will be unable to set forth any facts sufficient to find the risk of flight in this particular case is extreme or unusual.

Furthermore, a defendant should not be detained as a "serious risk" of flight when the risk of non-appearance can be mitigated by conditions of release. The only defendants who qualify for detention under § 3142(f)(2) are those who are "[t]rue flight risks"— defendants that the government can show are likely to willfully flee the jurisdiction with the intention of thwarting the judicial process. The government cannot make that showing here, and as explained below, there are conditions that can reasonably ensure Mr. Osman's appearance at court.

## II.      The BRA Detention Factors Support Release with Conditions.

*Nature and Circumstances of the Offense*

The indictment charges Mr. Osman primarily with wire fraud, conspiracy to commit wire fraud, money laundering, and conspiracy to commit money laundering. According to the indictment, each of the alleged offenses occurred twelve years ago in 2014 when the government alleged certain individuals submitted false invoices to the Kuwaiti Embassy to receive payment for services that were never rendered. There are no allegations of any violence, threats, use of weapons, or other conduct that would give the Court concern about the physical safety of community members should Mr. Osman be released. The harm alleged, and the crimes charged, are all financial in nature. Importantly, the indictment does not suggest Mr. Osman's alleged criminal conduct continued beyond 2014, and there does not appear to be any allegation of similar conduct having occurred in the last twelve years. Accordingly, while the charges in this matter are serious, the dated nature of the alleged offenses and the circumstances surrounding them weigh in favor of release with court conditions.

*Weight of the Evidence*

Although this case has met at least the minimum standard of probable cause given the grand jury's return of an indictment, this factor does not support detention when weighed against the presumption of innocence. "Even overwhelming evidence of guilt would not, alone, meet [the

clear and convincing test].” *United States v. Taylor*, 289 F. Supp. 3d 55, 66 (D.D.C. 2018). Here, the defense has not yet received a production of discovery from the government, and it is unclear how the government intends to proceed on charges that stem from conduct that allegedly occurred twelve years ago. The indictment itself is bare on the facts of (1) how suspect bank accounts and transactions were linked to Mr. Osman and (2) how the government determined Mr. Osman to be the individual who allegedly submitted invoices or cashed checks for services that had not been rendered. Moreover, given the amount of time that has passed since these alleged offenses, it is unclear how the government intends to prove, or if it is even capable of proving, its case. Without information more closely tying the allegations to provable facts, the weight of the evidence does not favor detention.

*History and Characteristics*

Mr. Osman’s history and characteristics strongly support the contention that there are conditions of release which can reasonably ensure his appearance at future court dates. First, Mr. Osman is 66 years old, and he has significant ties to the greater Washington, D.C. community. He has numerous family members, including at least one child, nieces, nephews, and siblings who all live within driving distance of the District. When Mr. Osman was detained, he was actually on his way to visit with his local family. And many of Mr. Osman’s family members have contacted undersigned counsel to offer their support. Lastly, Mr. Osman has no criminal convictions and no bench warrant history.

As alluded to in an earlier portion of this memorandum, Mr. Osman also has significant health concerns that require monitoring and care that can best be met in the community. Mr. Osman requires dialysis on a 24 to 48 hour basis, suffers from significant back issues, and has difficulty walking due to problems with his knee. Counsel is aware that (as of June 15, 2026) the D.C. Department of Corrections had not yet provided Mr. Osman with a wheelchair to aid with his

movement and also understands that, while Mr. Osman is incarcerated, he is unable to attend physical therapy appointments to ensure that he does not suffer from paralysis of his back. Given the above facts, Mr. Osman's history and characteristics weigh in favor of release.

*The Nature and Seriousness of the Danger to Any Person or the Community Posed by Mr. Osman's Release*

The government has not and cannot provide clear and convincing evidence to support a finding that Mr. Osman would be a danger to the community if released; indeed, they do not appear to be making this argument in the first instance. Critically, the dangerousness analysis "does not turn on any generalized, backward-looking assessment" of the offender or the crime. *Munchel*, 991 F.3d at 1286 (Katsas, J., concurring). "Instead, it turns on a specific, forward looking assessment of whether" the individual "currently pose[s] an unmitigable threat to public safety." *Id.* The government will not be able to provide specific evidence to support a finding that Mr. Osman poses an unmitigable threat to public safety, and even assuming this standard is met, stringent conditions of release can ensure the safety of the community.

### III.    Mr. Osman Must Be Released Because There Are Conditions That Will Reasonably Assure his Appearance at Future Court Proceedings.

A defendant cannot be detained "unless a finding is made that no release conditions 'will reasonably assure . . . the safety of the community'" and the defendant's appearance in court. *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986) (quoting 18 U.S.C. § 3142(e)). As described above, the government cannot prove by a preponderance of the evidence that there are no conditions that would reasonably assure Mr. Osman's appearance in court. Thus, Mr. Osman should be released, and the defense suggests that the following conditions of release under 18 U.S.C. § 3142(c)(1)(B), and any other conditions the Court deems necessary, will reasonably assure Mr. Osman's appearance in court.

- Home confinement with an allowance for legal visits and medical appointments as approved by pretrial;

- GPS monitoring;
- Report on a "regular basis" to PTS or some other agency, *id*. § 3142(c)(1)(B)(vi);
- Refrain from possessing "a firearm, destructive device, or other dangerous weapon," *id*. § 3142(c)(1)(B)(viii);
- Refrain from "excessive use of alcohol," *id*. § 3142(c)(1)(B)(ix); and
- Refrain from "any use of a narcotic drug or other controlled substance . . . without a prescription," *id*. § 3142(c)(1)(B)(ix).

## CONCLUSION

For the foregoing reasons, Mr. Osman respectfully requests that this Court release him with conditions.

Respectfully submitted,

*/s/ Jacqueline Yarbro*

Jacqueline Yarbro
Counsel for Hussein Osman
D.C. Bar No. 1617572
Covert Jackson Yarbro PLLC
1100 H Street NW, Suite 1050
Washington, DC 20005
Phone: (202) 264-9121
Email: jyarbro@cjypllc.com

8